# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREY DARRYL WIRSZ, <br><br>                    Petitioner, <br><br>     v. <br><br> JOHN SUGRUE, Warden, <br><br>                    Respondent. | 1:09-cv-01204-JLT HC <br><br> ORDER GRANTING RESPONDENT'S MOTION TO DISMISS FIRST AMENDED PETITION FOR LACK OF STANDING (Doc. 22) <br><br> ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE FILE <br><br> NO CERTIFICATE OF APPEALABILITY REQUIRED |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner filed the instant federal petition on July 13, 2009. (Doc. 1). On July 24, 2009, Petitioner filed his written consent to the jurisdiction of the United States Magistrate Judge for all purposes. (Doc. 3). On June 6, 2009, Respondent filed a similar consent to the Magistrate Judge's jurisdiction. (Doc. 15).

The petition alleged that Petitioner was convicted of conspiracy to distribute marijuana in the United States District Court for the Western District of Washington on July 11, 2008, and sentenced to a term of 78 months. (Doc. 1, p. 2). The petition also alleged that the sentencing judge recommended Petitioner's eligibility for a "treaty transfer." (Id., p. 7). Petitioner, a citizen of Canada, raised a single habeas claim that he was "entitled to an international prisoner transfer

to Canada," and that he was "requesting an order from the court to transfer [him] to a prison in Canada...." (Id., p. 3).

On December 15, 2009, the Court ordered Petitioner to file a first amended petition in which Petitioner specified what treaty had been violated, how and in what manner Petitioner had invoked that treaty, that he had been denied the benefits of said treaty, and that the decision denying the benefits of said treaty was improperly or unlawfully made. (Doc. 5). On January 8, 2010, Petitioner filed the first amended petition, alleging that he applied to the United States Bureau of Prisons ("BOP") for a treaty transfer to Canada on November 7, 2008, that on March 24, 2009, the International Prisoner Transfer Unit of the U. S. Department of Justice denied Petitioner's request "because of the seriousness of the offense and because of the serious law enforcement concerns," and that no administrative appeal of that denial is permitted, although that Petitioner may reapply for such a transfer after two years. (Doc. 7, p. 7).

On March 20, 2010, the Court ordered Respondent to file a response. (Doc. 8). On August 30, 2010, Respondent filed the instant motion to dismiss the petition, arguing that Petitioner lacked standing to challenge a denial of transfer under the applicable treaty. (Doc. 22). On September 10, 2010, Petitioner filed his opposition to the motion to dismiss. (Doc. 23). For the reasons set forth below, the Court agrees with Respondent that Petitioner lacks standing under the treaty and therefore the petition must be dismissed.

**DISCUSSION**

A.  Procedural Grounds for Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed Respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state

remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss after the Court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's motion to dismiss is based on Respondent's contention that Petitioner lacks standing to challenge Respondent's denial of his transfer request. Such an argument is similar in nature to a motion to dismiss for lack of exhaustion. Accordingly, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4. O'Bremski, 915 F.2d at 420.

B. Legal Context For International Prisoner Transfers.

A federal prisoner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998); United States v. Tubwell, 37 F.3d 175, 177 (5th Cir. 1994); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991); United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991); Barden v. Keohane, 921 F.2d 476, 478-79 (3rd Cir. 1991); United States v. Hutchings, 835 F.2d 185, 186-87 (8th Cir. 1987); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).

Under federal law, a petitioner is entitled to habeas relief if he is "in custody in violation of the Constitution or laws *or treaties* of the United States." 28 U.S.C. § 2241(c)(3). (Emphasis supplied). See also, Rule 1 to the Rules Governing § 2254 Cases in the United States District Court. Under the Transfer of Offenders to or from Foreign Countries Act, 18 U.S.C. § 4100 et seq. ("the Act"), pursuant to a treaty, the Attorney General may "transfer offenders under a sentence of imprisonment...to the foreign countries of which they are citizens or nationals" and "make regulations for the proper implementation of such treaties...and to...implement [the Act]." 18 U.S.C. §§ 4102(3),(4). Significantly, the Act applies "only when a treaty providing for such a transfer is in force." 18 U.S.C. § 4100(a)(emphasis supplied). Moreover, the Act authorizes the Attorney General, acting on behalf of the United States, to transfer offenders in his discretion.

1  However, the Act does not contain any limits on the exercise of the Attorney General's
2  discretion. 18 U.S.C. §§ 4102(1), (3). Finally, the Act authorizes the Attorney General "to
3  delegate the authority conferred by this chapter to officers of the Department of Justice." See 18
4  U.S.C. § 4102(11). That authority has been delegated to Respondent Bureau of Prisons. See 28
5  C.F.R. § 0.96b.
6       In 1978, the United States and Canada entered into a bilateral treaty based upon the two
7  countries' mutual desire "to enable Offenders, with their consent, to serve sentences of
8  imprisonment or parole or supervision in the country of which they are citizens, thereby
9  facilitating their successful reintegration into society." Treaty Between the United States of
10 America and Canada on the Execution of Penal Sentences, July 19, 1978, T.I.A.S. No. 9552, 30
11 U.S.T. 6263, 1978 WL 182456 ("the Treaty"), Preamble. The Treaty provides, in pertinent part,
12 that every transfer "shall be commenced by a written application submitted by the Offender to the
13 authority of the Sending State. *If the authority of the Sending State approves*, it will transmit the
14 application, together with its approval, through diplomatic channels to the authority of the
15 Receiving State." Treaty, Art. III, ¶ 3. If the Receiving State concurs, "it will so inform the
16 Sending State and initiate procedures to effectuate the transfer of the Offender at its own
17 expense. If it does not concur, it will promptly advise the authority of the Sending State."
18 Treaty, Art. III, ¶ 4. (Emphasis supplied).
19      On March 21, 1983, the United States became a signatory to a multi-lateral treaty entitled
20 the Convention on the Transfer of Sentenced Persons, T.I.A.S. No. 10824, Europ. T.S. No. 112
21 ("the Convention"). The Convention was ratified by President Reagan on July 17, 1984 and
22 became effective on July 1, 1985. Convention, T.I.A.S. No. 10824, 35 U.S.T. 2867, 1983 WL
23 472046. The Convention provides in pertinent part as follows:
24    "A sentenced person may be transferred under this Convention only on the following
25 conditions:
26      a. if that person is a national of the administering State;
        b. if the judgment is final;
27      c. if, at the time of receipt of the request for transfer, the sentenced person still has at least
        six months of the sentence to serve or if the sentence is indeterminate;
28      d. if the transfer is consented to by the sentenced person...;
        e. if the acts or omissions on account of which the sentence has been imposed constitute

a criminal offense according to the law of the administering State or would constitute a criminal offense if committed on its territory; and

f. *if the sentencing and administering States agree to the transfer.*"

Convention, Art. III, ¶ 1(f). (Emphasis supplied). Thus, both the Treaty and the Convention could conceivably invoke the statutory provisions of the Act. Petitioner claims entitlement to transfer under both the Treaty and the Convention. (Doc. 7, p. 8).[1]

C. Factual Background.

The documents now before the Court establish that at Petitioner's sentencing, his attorney requested a treaty transfer recommendation from the trial court. (Doc. 7, p. 16). The prosecution did not object, and the trial court subsequently made the recommendation on the record. (Id.). However, the Court noted that "I don't have the final authority to say that is going to happen one way or the other." (Id.).

On November 7, 2008, while incarcerated at California City Correctional Center, California City, California, Petitioner submitted a BOP Transfer Inquiry form in which he requested a transfer to his native Canada. (Doc. 7, p. 13). On March 24, 2009, Paula A. Wolff, Chief of the International Prisoner Transfer Unit, U.S. Department of Justice ("DOJ"), sent Petitioner a letter denying his request for transfer, citing the "seriousness of the offense and because of serious law enforcement concerns." (Doc. 7, p. 14). Subsequently, it appears that Petitioner's attorney sought reconsideration of the DOJ's decision to deny the transfer, and on September 4, 2009, Ms. Wolff sent a letter to Petitioner's attorney indicating that "this office is not prepared to reverse its decision," but noting that Petitioner could "reapply for a transfer in March 2011." (Doc. 7, p. 22).

D. Allegations In The First Amended Petition.

In the first amended petition, Petitioner contends that the sentencing court recommended transfer, the prosecution did not object, that Petitioner's prison record is exemplary, that transfer would occasion minimal cost, and that the DOJ's denial of his transfer request represents a

---

[1] Although Petitioner indicates that he is basing his habeas claim on the Treaty, the Convention, and yet another multi-lateral treaty for prisoner transfer, the citations he provides relate to only the Treaty and the Convention. (Doc. 7, p. 8). Accordingly, the Court will address Petitioner's concerns as being based on those two international agreements.

5

1 violation of the policy established in the United States Attorney's Manual, section 9-35.100,
2 which provides that when a prosecutor either recommends or does not oppose a transfer
3 recommendation by the sentencing court as part of a plea agreement, the prosecutor is bound by
4 that position "in subsequent communications, both formal and informal, with the Office of
5 Enforcement Operations." (Doc. 7, pp. 8-11).

      E.  <u>Lack of Standing</u>.

As mentioned, Respondent contends that Petitioner lacks standing to raise a habeas claim under the provisions of either the Convention or the Treaty, and therefore the petition must be dismissed. The Court agrees.

"To satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." <u>Iron Arrow Honor Society v. Heckler</u>, 464 U.S. 67, 70 (1984); <u>Simon v. Eastern Ky. Welfare Rights Org.</u>, 426 U.S. 26, 38, 96 S.Ct. 1617, 1924 (1976); <u>NAACP., Western Region v. City of Richmond</u>, 743 F.2d 1346, 1352 (9th Cir. 1984). Standing is a judicially created doctrine that is an essential part of the case-or-controversy requirement of Article III. <u>Pritikin v. Department of Energy</u>, 254 F.3d 791, 796 (9th Cir. 2001). "Standing, unlike other jurisdictional doctrines, focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." <u>Pritikin v. Department of Energy</u>, 254 F.3d 791, 796 (9th Cir. 2001) (quoting <u>Simon v. Eastern Ky. Welfare Rights Org.</u>, 426 U.S. 26, 38 (1976)).

The court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing. <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155-56 (1990); <u>Schmier v. U.S. Court of Appeals for Ninth Circuit</u>, 279 F.3d 817, 821 (9th Cir. 2002).

To have standing, a plaintiff must show three elements.

> First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal citations and quotations omitted); Central Delta Water Agency v. United States, 306 F.3d 938, 946-47 (9th Cir. 2002). The Supreme Court has described a plaintiff's burden of proving standing at various stages of a case as follows:

> Since [the standing elements] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed.Rule Civ.Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

Lujan v. Defenders of Wildlife, 504 U.S. at 561; see also Churchill County v. Babbitt, 150 F.3d 1072, 1077 (9th Cir. 1998).

With respect to treaties, there is a presumption that "treaties do not create privately enforceable rights in the absence of express language to the contrary," even when the treaty may benefit specific individuals. Mora v. New York, 524 F.3d 183, 201 (2d Cir. 2008)(*quoting* Medellin v. Texas, 552 U.S. 491, 138 S.Ct. 1346, 1357, n. 3 (2008)). As Respondent correctly points out, nothing in the Act, the Treaty, or the Convention contains such express language creating an individually enforceable right. As discussed above, both the Treaty and the Convention provide that transfers will occur only when the sending and receiving countries agree to the transfer. Since Petitioner's request for a transfer was denied by the Attorney General, acting through the DOJ's International Prisoner Transfer Unit, neither the Treaty's nor the Convention's conditions for transfer were met.

In the absence of express language making these agreements actionable by individuals, Petitioner lacks standing to challenge the DOJ's denial of his transfer request. In Yosef v. Killian, 646 F.Supp.2d 499 (E.D.N.Y. 2009), the U.S. District Court addressed this very issue. Petitioner in that case was a citizen of Israel who sought habeas relief after his transfer request was denied by DOJ under the Act and the Convention. In finding that Yosef lacked standing to

1  raise his habeas claim, the district court held that, "When a treaty providing for transfer is in
2  force, the Act specifies how the treaty provisions may be implemented..., but it does not give
3  prisoners any right to be transferred independent of the treaty." Yosef, 646 F.Supp.2d at 507.
4  As the New York district court noted, its holding was consistent with other district courts that
5  had addressed the issue. See Bagguley v. Bush, 953 F.2d 660, 662 (D.C.Cir. 1991)(no protected
6  liberty interest in a transfer under the Act or Convention); Scalise v. Thornburgh, 891 F.2d 640,
7  649 (7th Cir. 1989)(the Act does not give rise to a "liberty interest in prisoners seeking
8  international prisoner transfers"); United States ex rel. Rickard v. Sternes, 149 F.Supp. 2d 437,
9  451 (N.D.Ill. 2001)("The Convention imparts no individual right for a foreign national prisoner
10 to be transferred to his home country."); Coleman v. Reno, 91 F.Supp.2d 130, 132 (D.D.C.
11 2000)(dismissing suit to compel Attorney General to accept custody of United States citizen
12 incarcerated in Canada for failure to state a claim).

13      As in Yosef, Petitioner has no "legally protected" individual right to a transfer under the
14 Act, the Treaty, or the Convention. Accordingly, he lacks standing to bring this habeas petition.
15 Lujan, 504 U.S. at 560-61. Because he lacks standing, Respondent's motion to dismiss for lack
16 of standing will be granted and the petition must be dismissed.[2]

## ORDER

18  For the foregoing reasons, the Court HEREBY ORDERS as follows:
19  1.    Respondent's motion to dismiss for lack of standing (Doc. 22), is GRANTED;
20  2.    The first amended petition for writ of habeas corpus (Doc. 7), is DISMISSED;
21  3.    The Clerk of the Court is DIRECTED to enter judgment and close the file.
22  ///

---

[2] In light of the Court's analysis of the standing issue, Petitioner's contentions in his first amended petition and in his opposition to the motion to dismiss that his prison record is exemplary, the prosecution and the sentencing court did not oppose a transfer, and the prosecutor failed to follow the policies in the U.S. Attorney's Manual, are irrelevant. Without a legally protected right to sue under the Act, the Treaty, and the Convention, Petitioner has no legal standing and therefore cannot proceed regardless of the presence of other factors that, if an individual right to sue existed, might support Petitioner's claim for habeas relief. Petitioner's argument in his opposition that Respondent's denial of his transfer request is barred by the doctrine of res judicata makes no sense. Petitioner, however, has made a conclusory allegation that res judicata applies without identifying any previous "final judgment upon the merits of the action" that would bar Respondent's decision to deny his transfer to Canada. (Doc. 23, p. 3). Without even the most basic explanation by Petitioner of how the doctrine of res judicata would operate here to bar Respondent's decision, the Court will not entertain such a frivolous argument.

4.     No certificate of appealability is required.

IT IS SO ORDERED.

Dated:   **October 8, 2010**                              **/s/ Jennifer L. Thurston**
                                                          UNITED STATES MAGISTRATE JUDGE